JOSEPH PERL et al., Respondents, v MEHMOOD MEHER et al., Appellants. [902 NYS2d 632]—

In an action to recover damages for personal injuries, etc., the defendants appeal from an order of the Supreme Court, Kings County (Martin, J.), dated April 15, 2009, which denied their motion for summary judgment dismissing the complaint on the ground that the plaintiff Joseph Perl did not sustain a serious injury within the meaning of Insurance Law § 5102 (d).

Ordered that the order is reversed, on the law, with costs, and the defendants' motion for summary judgment dismissing the complaint is granted.

The defendants established their prima facie entitlement to judgment as a matter of law by demonstrating that the injured plaintiff, Joseph Perl (hereinafter the injured plaintiff), did not sustain a serious injury within the meaning of Insurance Law § 5102 (d) as a result of the subject accident (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345 [2002]; *Gaddy v Eyler*, 79 NY2d 955 [1992]). The defendants' orthopedist, Dr. S. Farkas, provided a detailed explanation, including specific observations, for his conclusion that any restrictions in motion were self-imposed by the injured plaintiff and that there were no objective orthopedic findings which would indicate any disability, impairment, or limitation resulting from the accident (*see Gonzales v Fiallo*, 47 AD3d 760 [2008]).

It is well established that in threshold serious injury cases, restrictions in range of motion typically are numerically quantified (*see Friscia v Mak Auto, Inc.*, 59 AD3d 492, 493 [2009]; *Fiorillo v Arriaza*, 52 AD3d 465, 466 [2008]; *Duke v Saurelis*, 41 AD3d 770, 771 [2007]; *Desamour v New York City Tr. Auth.*, 8 AD3d 326, 327 [2004]), compared to the norms (*see Fiorillo v Arriaza*, 52 AD3d at 466; *Malave v Basikov*, 45 AD3d 539 [2007]; *Nociforo v Penna*, 42 AD3d 514, 515 [2007]; *McNulty v Buglino*, 40 AD3d 591 [2007]), and based upon identified objective tests (*see Sapienza v Ruggiero*, 57 AD3d 643, 644 [2008]; *Gastaldi v Chen*, 56 AD3d 420, 421 [2008]; *Young Hwan Park v Orellana*, 49 AD3d 721 [2008]; *Murray v Hartford*, 23 AD3d 629 [2005]; *Nozine v Sav-On Car Rentals*, 15 AD3d 555, 556 [2005]). These requirements are applied to defendants seeking summary judgment, as well as to plaintiffs opposing summary judgment. The plaintiffs are also required to demonstrate restricted range of motion based on findings both contemporaneous to the accident (*see Stevens v Sampson*, 72 AD3d 793 [2010]; *Jack v Acapulco Car Serv., Inc.*, 72 AD3d 646 [2010]; *Sierra v Gonzalez First Limo*, 71 AD3d 864 [2010]; *Little v Locoh*, 71 AD3d 837 [2010]) and upon recent findings (*see Sham v B&P Chimney Cleaning & Repair Co., Inc.*, 71 AD3d 978 [2010]; *Carrillo v DiPaola*, 56 AD3d 712 [2008]; *Krauer v Hines*, 55 AD3d 881, 882 [2008]).

Here, Dr. Leonard Bleicher examined the injured plaintiff on May 2, 2005, shortly after the accident, as Dr. Bleicher was his treating physician. The affirmation of Dr. Bleicher, submitted in opposition to the defendants' motion for summary judgment, failed to identify the range of motion tests utilized by him, the numerical results of those tests, or the norms against which results are measured. The affirmation, therefore, failed to meet the requirements set forth in this Court's sound and well-established precedents.

We disagree with the suggestion of our dissenting colleagues that Dr. Bleicher's arguably adequate findings from the examination of the injured plaintiff on June 25, 2007, some two years after the accident, quantifying restrictions compared to norms and based upon objective tests, can, in effect, be stretched to remedy the multiple deficiencies of the 2005 findings which were made only days after the accident. While a physician's description of "norms" may be capable of transfer from one examination to another by that physician, the same cannot be said for the quantification of an examinee's restricted motion and of the objective tests utilized to measure restrictions, since such information may differ from one examination to the next.

Where, as here, the defendants established their prima facie

entitlement to judgment as a matter of law, the burden shifted to the plaintiffs opposing summary judgment to raise in admissible form triable issues of fact (see *Gaddy v Eyler*, 79 NY2d at 956-957; *Franco v Akram*, 26 AD3d 461 [2006]; *D'Amato v Mandello*, 2 AD3d 482 [2003]). With respect to Dr. Bleicher's May 2, 2005, examination of the injured plaintiff, the plaintiffs failed to meet this burden. The result urged by our dissenting colleagues, that we deem the 2007 findings as somehow curing the shortcomings of the reported 2005 findings, is not supported by the applicable law and can only be reached by disregarding this Court's precedent which we are not prepared here to sanction.

We also disagree with our dissenting colleagues' conclusion that Dr. Bleicher's affirmation was sufficient to raise a triable issue of fact based upon a qualitative assessment of the injured plaintiff's condition, both contemporaneous to the accident and recently (see *Toure v Avis Rent A Car Sys.*, 98 NY2d at 350-351). For a qualitative evaluation to suffice, the Court of Appeals has held that it must have "an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system" (*id.* at 350; see *Dufel v Green*, 84 NY2d 795, 798 [1995]). Here, the plaintiffs did not argue the issue of qualitative assessment in their appellate submission. In any event, Dr. Bleicher's failure to identify, inter alia, the objective tests utilized by him during his 2005 examination of the injured plaintiff deprives the plaintiffs of admissible qualitative assessment opinion.

The plaintiffs' remaining contentions are without merit. Dillon, J.P., Miller and Balkin, JJ., concur.

Austin, J., dissents and votes to affirm the order appealed from, with the following memorandum in which Leventhal, J., concurs:

By ruling that the injured plaintiff, Joseph Perl (hereinafter the injured plaintiff), failed to strictly comply with a standard of medical proof which can be found nowhere in Insurance Law § 5102 (d), the majority bars a colorably meritorious claim from reaching a jury. Because I believe that such an approach is contrary to New York's long-standing policy of preferring cases to be determined on the merits (see e.g. *Bunch v Dollar Budget, Inc.*, 12 AD3d 391 [2004]), I respectfully dissent and vote to affirm the order appealed from.

In general, "[i]t is well settled that summary judgment is a drastic remedy that is to be granted only where there is no clear triable issue of fact" (*Mosheyev v Pilevsky*, 283 AD2d 469 [2001];

*see Andre v Pomeroy,* 35 NY2d 361, 364 [1974]). "Even the color of a triable issue forecloses the remedy" (*Rudnitsky v Robbins,* 191 AD2d 488, 489 [1993]; *see Matter of Cuttitto Family Trust,* 10 AD3d 656, 657 [2004]). Moreover, in deciding a summary judgment motion, the evidence must be construed in a light most favorable to the party opposing the motion (*see Pearson v Dix McBride, LLC,* 63 AD3d 895 [2009]; *Mosheyev v Pilevsky,* 283 AD2d at 469).

While I agree with the majority that the defendants met their prima facie burden of demonstrating their entitlement to judgment as a matter of law by showing that the plaintiff did not sustain a serious injury within the meaning of Insurance Law § 5102 (d) as a result of the subject accident, I believe that the Supreme Court properly denied the motion for summary judgment dismissing the complaint, because a reading of the entirety of the physician's affirmation tendered by the injured plaintiff in opposition was sufficient to raise a triable issue of fact.

In opposition to the motion, the injured plaintiff submitted the affirmation of Dr. Leonard Bleicher, his treating physician. Dr. Bleicher concluded that the injured plaintiff suffered from "numerically and objectively determined restrictions of range [of] motion of both knees, cervical and lumbar spine," and that those "significant and permanent injuries . . . represent impairments with limitation of body functions [and] are causally related to [the subject accident]." In his affirmation, Dr. Bleicher noted that when he examined the injured plaintiff on May 2, 2005, six days after the subject accident, and as a prelude to treatment rather than litigation, "[t]he patient's range of motion was less than 60% of normal in the cervical and lumbar spine." Additionally, Dr. Bleicher reported finding a "left and right knee extension decrease" during that examination. Based on his findings and the fact that the injured plaintiff had neither suffered any similar symptoms before the accident nor had any prior injuries or medical conditions which would result in such findings, Dr. Bleicher concluded that his findings on May 2, 2005, were related to the subject accident.

Dr. Bleicher further affirmed that when he re-examined the injured plaintiff on June 25, 2007, he conducted cervical/thoracic, lumbosacral spine, and knee joint range-of-motion studies which revealed significant limitations and deficiencies. In his affirmation, he detailed the results of the range-of-motion tests conducted on June 25, 2007, and the norms against which he measured those results in arriving at his conclusions.

I disagree with my colleagues' conclusion that Dr. Bleicher's

affirmation was insufficient to raise a triable issue of fact. Although it failed to set forth the range-of-motion tests performed, the numerical results of those tests, or the norms against which those tests were measured in connection with the limitations noted during the May 2005 examination, such information was provided in connection with the findings made during the June 2007 examination. Because range-of-motion testing and norms were, in fact, set forth in Dr. Bleicher's affirmation, it elevates form over substance to conclude that his affirmation is without evidentiary value because those norms were not specifically associated with the findings made during the May 2005 examination.

Put another way, from the four corners of his affirmation, Dr. Bleicher avers objective findings based on a norm which is stated once instead of the usual two times. Based upon the finding that, six days postaccident, the plaintiff suffered a greater than 60% loss of range of motion against the norm which is set forth later in Dr. Bleicher's affirmation, the plaintiff was properly found to have met his burden of proof (see Dufel v Green, 84 NY2d 795, 798 [1995] [an expert's designation of a numeric percentage of a plaintiff's loss of range of motion sufficed to establish a claim of serious injury]; Lopez v Senatore, 65 NY2d 1017 [1985]). Any perceived deficiencies in Dr. Bleicher's findings could be subjected to the crucible of cross-examination at trial (see Toure v Avis Rent A Car Sys., 98 NY2d 345, 350-351 [2002] ["(A)n expert's qualitative assessment of a plaintiff's condition also may suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system. . . When supported by objective evidence, an expert's qualitative assessment of the seriousness of a plaintiff's injuries can be tested during cross-examination, challenged by another expert and weighed by the trier of fact" (citations omitted)]).

The Toure court did not establish a precise formula to which a treating doctor's submission must rigidly adhere. The majority assumes that days after an accident, an injured plaintiff presents to his or her doctor for the purpose of litigation rather than treatment. Research reflects no case law which mandates that a treating physician record his or her findings of that initial examination in a particular manner. Rather, so long as the affirmation of the treating physician indicates that his or her contemporaneous testing revealed a measurable limitation of the injured plaintiff's range of motion, the threshold set forth in Insurance Law § 5102 (d) should be deemed to be satisfied. The

cases cited by the majority with regard to a treating physician's contemporaneous examination are not inconsistent with this view (*see Stevens v Sampson*, 72 AD3d 793 [2010] [the plaintiff submitted an affirmed statement of a physician who did not treat the plaintiff at the time of the accident]; *Jack v Acapulco Car Serv., Inc.*, 72 AD3d 646 [2010] [the plaintiff's first treatment came four years after the accident]; *Sierra v Gonzalez First Limo*, 71 AD3d 864, 865 [2010] [absence of "any range of motion findings which were contemporaneous with the subject accident"]; *Little v Locoh*, 71 AD3d 837 [2010] [unaffirmed report of treating physician insufficient to meet the plaintiff's burden]).

To hold a treating physician to a litigation standard of marking his or her chart at such an early stage effectively turns away plaintiffs with arguably colorable claims who seek treatment with a physician who is more focused on providing care than preparing for litigation. This unfortunate result does little, if anything, to promote the legislative purpose of Insurance Law § 5102 (d) which was to "weed out frivolous claims" (*Dufel v Green*, 84 NY2d at 798; *see Licari v Elliott*, 57 NY2d 230, 234-235 [1982]). On the other hand, years after the accident, and in consultation with defense counsel, the defendants' doctors see an injured plaintiff solely for the litigation purpose of dismissal of that plaintiff's claim. This places an injured plaintiff and his or her treating physician at a severe disadvantage in opposing a defendant's summary judgment motion.

The majority fails to account for differences in approach by treating doctors which convey the required information in a less than perfect way. It should be of no moment that some doctors do, in fact, record their findings in such a way that satisfies the majority view.

I believe that the injured plaintiff, through Dr. Bleicher's affirmation, adequately raised a triable issue of fact as to whether he sustained a serious injury under the permanent consequential limitation of use and/or significant limitation of use categories of Insurance Law § 5102 (d) as a result of the subject accident (*see Toure v Avis Rent A Car Sys.*, 98 NY2d at 353; *Sanevich v Lyubomir*, 66 AD3d 665 [2009]; *Casey v Mas Transp., Inc.*, 48 AD3d 610, 611 [2008]; *Green v Nara Car & Limo, Inc.*, 42 AD3d 430, 431 [2007]).

Accordingly, in my view, the Supreme Court properly denied the defendants' motion for summary judgment dismissing the complaint.