[960 NE2d 424, 936 NYS2d 655]

JOSEPH PERL et al., Appellants, v MEHMOOD MEHER et al., Respondents.

DAVID ADLER et al., Appellants, v PINCUS BAYER et al., Respondents.

SHEILA TRAVIS, Appellant, et al., Plaintiffs, v NASSIROU M. BATCHI et al., Respondents.

Argued October 19, 2011; decided November 22, 2011

210

## POINTS OF COUNSEL

*Law Offices of Annette G. Hasapidis*, South Salem (*Annette G. Hasapidis* of counsel), and *Schwartz, Goldstone & Campisi, LLP*, New York City, for Joseph Perl and another, appellants in the first above-entitled action. I. Defendants did not make out a prima facie case because Dr. Farkas conceded, on the one hand, that objective test results proved that plaintiff sustained a serious injury but then subjectively opined, on the other hand, that plaintiff was "exaggerating" his symptoms. (*Toure v Avis Rent A Car Sys.*, 98 NY2d 345; *Washington v Delossantos*, 44 AD3d 748; *Nitti v Clerrico*, 98 NY2d 345; *Iannello v Vazquez*, 78 AD3d 1121; *Vargas v Tomorrow Travel & Tour, Inc.*, 74 AD3d 1626; *Hartman-Jweid v Overbaugh*, 70 AD3d 1399; *Torres v Garcia*, 59 AD3d 705; *Busljeta v Plandome Leasing, Inc.*, 57 AD3d 469; *Santos v Taveras*, 55 AD3d 405; *Gonzales v Fiallo*, 47 AD3d 760; *Thomas v Smith*, 25 AD3d 786.) II. Defendants did not make out a prima facie case because defendants never provided their examining physicians with any of plaintiff's medical records. (*Abbadessa v Rogers*, 40 AD3d 665; *Toure v Avis Rent A Car Sys.*, 98 NY2d 345; *Balanta v Stanlaine Taxi Corp.*, 307 AD2d 1017; *Lewis v Ulloa-Gonzalez*, 20 Misc 3d 1104[A], 2008 NY Slip Op 51222[U].) III. Because defendants failed to meet their burden, their motion should have been denied "regardless of the sufficiency of the opposing papers." (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851; *Quinn v Nyack Hosp.*, 286 AD2d 675; *Cugini v System Lbr. Co.*, 111 AD2d 114.) IV. Additionally or alternatively, plaintiffs raised a question of fact by presenting Dr. Bleicher's qualitative assessment that plaintiff sustained a serious injury. (*Pajda v Pedone*, 303 AD2d 729; *Leeber v Ward*, 55 AD3d 563; *Toure v Avis Rent A Car Sys.*, 98 NY2d 345; *Dufel v Green*, 84 NY2d 795; *Licari v Elliott*, 57 NY2d 230; *Lopez v Senatore*, 65 NY2d 1017; *Gaddy v Eyler*, 79 NY2d 955; *Scheer v Koubek*, 70 NY2d 678; *Pierson v Edwards*, 77 AD3d 642; *Lopez v Abdul-Wahab*, 67 AD3d 598.)

*Law Offices of Annette G. Hasapidis*, South Salem (*Annette G. Hasapidis* of counsel), and *Schwartz, Goldstone & Campisi, LLP*, New York City (*Joseph Campisi* of counsel), for David Adler and another, appellants in the second above-entitled action. I. The lower court erred in ruling that a treating physician's findings from an examination, performed contemporaneously

with an accident, must both identify the objective tests and quantify the plaintiff's limitations in order to prove a serious injury. (*Toure v Avis Rent A Car Sys.*, 98 NY2d 345; *Ferraro v Ridge Car Serv.*, 49 AD3d 498; *D'Onofrio v Floton, Inc.*, 45 AD3d 525; *Morales v Daves*, 43 AD3d 1118; *Rodriguez v Cesar*, 40 AD3d 731; *Borgella v D & L Taxi Corp.*, 38 AD3d 701; *Pierson v Edwards*, 77 AD3d 642; *Lopez v Abdul-Wahab*, 67 AD3d 598.) II. Defendants failed to demonstrate that no valid line of reasoning could have led the jury to return a verdict for plaintiffs. (*Cohen v Hallmark Cards*, 45 NY2d 493; *Jones v Fraser*, 265 AD2d 773; *Risbrook v Coronamos Cab Corp.*, 244 AD2d 397; *Brown v Achy*, 9 AD3d 30; *Cruz v Castanos*, 10 AD3d 277; *Garcia v ARC XVI of Fort Wash.*, 20 Misc 3d 1125[A], 2008 NY Slip Op 51620[U]; *Smith v Besanceney*, 61 AD3d 1336; *Perez v Rodriguez*, 25 AD3d 506; *Malloy v Matute*, 79 AD3d 584.)

*Grant & Longworth, LLP*, Bronx (*Marie R. Hodukavich* of counsel), for Sheila Travis, appellant in the third above-entitled action. I. The Appellate Division departed from this Court's long established precedent in *Toure v Avis Rent A Car Sys.* (98 NY3d 345 [2002]) and applied the wrong standard of review when it limited its evaluation of plaintiff's limitations to range of motion measurements. (*Linton v Nawaz*, 62 AD3d 434, 14 NY3d 821; *Glynn v Hopkins*, 55 AD3d 498; *Mirochnik v Ostrovskiy*, 35 AD3d 413; *Iles v Jonat*, 35 AD3d 537; *Quinones v E & L Transp., Inc.*, 35 AD3d 577; *Armstrong v Morris*, 301 AD2d 931; *Dufel v Green*, 84 NY2d 795; *Countermine v Galka*, 189 AD2d 1043; *Robillard v Robbins*, 168 AD2d 803, 78 NY2d 1105; *Madden v Dake*, 30 AD3d 932.) II. The Appellate Division erred in reviewing plaintiff's opposition to the motion before it examined defendants' proof in support of their summary judgment motion. Because defendant failed to make a prima facie showing of entitlement to summary judgment, the burden never shifted to plaintiff and defendants' motion should have been denied. (*Linton v Nawaz*, 62 AD3d 434, 14 NY3d 821; *Glynn v Hopkins*, 55 AD3d 498; *Mirochnik v Ostrovskiy*, 35 AD3d 413; *Iles v Jonat*, 35 AD3d 537; *Quinones v E & L Transp., Inc.*, 35 AD3d 577; *Armstrong v Morris*, 301 AD2d 931; *Patterson v Rivera*, 49 AD3d 337; *Cassagnol v Williamsburg Plaza Taxi*, 234 AD2d 208; *Cosovic v Term Leasing*, 234 AD2d 79; *Rodriguez v Goldstein*, 182 AD2d 396.) III. There is a triable issue of fact on the question of causation between the motor vehicle accident and plaintiff's injuries. (*Pommells v Perez*, 4 NY3d 566; *Madden v Dake*, 30 AD3d 932.)

*Baker, McEvoy, Morrissey & Moskovits, P.C.*, New York City

(*Marjorie E. Bornes* and *Stacy R. Seldin* of counsel), for Mehmood Meher and others, respondents in the first and third above-entitled actions. I. The courts below properly held that defendants met their burden on the motion and established their prima facie entitlement to judgment. (*Toure v Avis Rent A Car Sys.*, 98 NY2d 345; *Gaddy v Eyler*, 79 NY2d 955; *Foley v Liloia*, 82 AD3d 832; *Washington v Delossantos*, 44 AD3d 748; *Sone v Qamar*, 68 AD3d 566; *Gonzales v Fiallo*, 47 AD3d 760; *Uddin v Cooper*, 32 AD3d 270; *Pommells v Perez*, 4 NY3d 566; *Kreimerman v Stunis*, 74 AD3d 753; *Thomas v Booker*, 76 AD3d 456; *Lopez v Abdul-Wahab*, 67 AD3d 598.) II. Plaintiff did not proffer medical evidence sufficient to rebut defendants' prima facie case that plaintiff did not sustain a "serious injury" within the meaning of section 5102 (d) of the Insurance Law of the State of New York. (*Resek v Morreale*, 74 AD3d 1043; *Kuchero v Tabachnikov*, 54 AD3d 729; *Alicea v Troy Trans, Inc.*, 60 AD3d 521; *Clemmer v Drah Cab Corp.*, 74 AD3d 660; *DeJesus v Cruz*, 73 AD3d 539; *Jean v Kabaya*, 63 AD3d 509; *Danvers v New York City Tr. Auth.*, 57 AD3d 252; *Sternberg v Sipzner*, 74 AD3d 1054; *Nieves v Castillo*, 74 AD3d 535; *Falkner v Hand*, 61 AD3d 1153.)

*Kaplan, Hanson, McCarthy, Adams, Finder & Fishbein*, Yonkers (*Jeffrey A. Domoto* of counsel), for Pincus Bayer and another, respondents in the second above-entitled action. I. The Court in *Toure v Avis Rent A Car Sys.* (98 NY2d 345 [2002]) did not intend to undertake a broader approach to allow more plaintiffs to meet the threshold. (*Pommells v Perez*, 4 NY3d 566.) II. Quantified range of motion testing contemporaneous to the accident provides a solid, definable bench mark upon which to weed out frivolous actions which do not meet the threshold. (*Licari v Elliott*, 57 NY2d 230; *Dufel v Green*, 84 NY2d 795.) III. Even assuming range of motion testing contemporaneous to the accident is found to be not probative and no longer required, plaintiff has still not met the threshold under *Toure v Avis Rent A Car Sys.* (98 NY2d 345 [2002]). (*Dufel v Green*, 84 NY2d 795; *Ikeda v Hussain*, 81 AD3d 496; *Lemos v Giacomo Mgt., Inc.*, 82 AD3d 602; *Rush v Kwan Chiu*, 79 AD3d 1004.) IV. Should the lower court's decision not be affirmed, this matter should be remanded for a new trial.

*Israel, Israel & Purdy, LLP*, Great Neck (*Stuart M. Israel* of counsel), for New Yorkers for Fair Automobile Insurance Reform, amicus curiae, in the first above-entitled action. The offer of medical testimony in automobile accident cases should

not be held to a standard different than medical testimony offered in other personal injury cases, a standard found nowhere in the Insurance Law and created wholly by a patchwork of conflicting court decisions. (*Matott v Ward*, 48 NY2d 455; *Matter of Ernest v Boggs Lake Estates*, 12 NY2d 414; *Matter of Cyr v Bero Constr. Corp.*, 75 AD2d 914; *John v City of New York*, 235 AD2d 210; *Elkins v Ferencz*, 93 NY2d 938, 253 AD2d 601; *Knutson v Sand*, 282 AD2d 42; *Dufel v Green*, 84 NY2d 795.)

*Nicholas I. Timko*, New York City, for New York State Trial Lawyers Association, amicus curiae, in the first above-entitled action. I. The majority violated the separation of powers doctrine and the plain meaning rule by encroaching upon the powers vested in the Legislature and rewriting the No-Fault Law. (*Matter of Maron v Silver*, 14 NY3d 230; *Plaut v Spendthrift Farm, Inc.*, 514 US 211; *Montgomery v Daniels*, 38 NY2d 41; *Licari v Elliott*, 57 NY2d 230; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Bates v United States*, 522 US 23; *Matter of Excellus Health Plan v Serio*, 2 NY3d 166; *People v Finnegan*, 85 NY2d 53; *Matter of Coates*, 9 NY2d 242; *Matter of Jerry v Board of Educ. of City School Dist. of City of Syracuse*, 35 NY2d 534.) II. Courts must apply the flexible approach to opposing threshold motions articulated in *Toure v Avis Rent A Car Sys.* (98 NY2d 345 [2002]). (*Matott v Ward*, 48 NY2d 455; *Whitaker v Soumano*, 81 AD3d 411; *Valentin v Pomilla*, 59 AD3d 184; *Mancini v Lali NY, Inc.*, 77 AD3d 797; *Catalano v Kopmann*, 73 AD3d 963.)

**OPINION OF THE COURT**

SMITH, J.

In *Pommells v Perez* (4 NY3d 566, 571 [2005]), then Chief Judge Kaye described the working of the No-Fault Law (officially the Comprehensive Motor Vehicle Insurance Reparations Act, Insurance Law § 5101 *et seq.*) by saying: "Abuse . . . abounds." That included, she said, "abuse . . . in failing to separate 'serious injury' cases" from others (*id.*).

No-fault abuse still abounds today. In 2010, no-fault accounted for 53% of all fraud reports received by the Insurance Department (Annual Report to the Governor and the Legislature of the State of New York on the Operations of the Insurance Frauds Prevention Act at 23). "Serious injury" claims are still a source of significant abuse, and it is still true, as it was in 2005, that many courts, including ours, approach claims that soft-tissue injuries are "serious" with a "well-deserved skepticism" (*Pommells*, 4 NY3d at 571).

Here, we confront three cases in which the Appellate Division rejected allegations of serious injury as a matter of law. We conclude that we must reverse in two of the cases, *Perl v Meher* and *Adler v Bayer*, because the evidence plaintiffs have put forward is legally sufficient. We affirm in the third case, *Travis v Batchi*.

In finding that two of these three claims survive our scrutiny, we by no means signal an end to our skepticism, or suggest that that of lower courts is unjustified. There are cases, however, in which the role of skeptic is properly reserved for the finder of fact, or for a court that, unlike ours, has factual review power.

I

Plaintiffs Joseph Perl, David Adler and Sheila Travis brought lawsuits for personal injuries allegedly resulting from automobile accidents; Perl's and Adler's wives also sued, asserting derivative claims. Because the No-Fault Law bars recovery in automobile accident cases for "non-economic loss" (e.g., pain and suffering) unless the plaintiff has a "serious injury" as defined in the statute, Perl, Adler and Travis seek to show that their injuries were serious.

Of the several categories of "serious injury" listed in the statutory definition, three are relevant here: "permanent consequential limitation of use of a body organ or member"; "significant limitation of use of a body function or system"; and

> "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment" (Insurance Law § 5102 [d]).

Plaintiffs in all these cases rely on one or both of the first two of these categories, claiming permanent and significant limitations of their use of a bodily organ or system. Travis also relies on the third category, claiming that she was disabled from "substantially all" of her "usual and customary daily activities" for at least 90 out of the 180 days following her accident.

Defendants challenged plaintiffs' showing of serious injury in all three cases. In *Perl*, defendants moved for summary judgment; Supreme Court denied the motion, but the Appellate

Division reversed and dismissed the complaint, with two Justices dissenting (*Perl v Meher*, 74 AD3d 930 [2d Dept 2010]). The *Adler* case was tried, resulting in a jury verdict for plaintiffs after defendants had unsuccessfully moved for judgment as a matter of law under CPLR 4401; the Appellate Division reversed, granted defendants' motion and dismissed the complaint (*Adler v Bayer*, 77 AD3d 692 [2d Dept 2010]). In *Travis*, Supreme Court granted defendants' motion for summary judgment and the Appellate Division affirmed (*Travis v Batchi*, 75 AD3d 411 [1st Dept 2010]). Plaintiffs in *Perl* appeal to this Court as of right, pursuant to CPLR 5601 (a). We granted leave to appeal to plaintiffs in *Adler* and *Travis*.

All three cases turn on the sufficiency of plaintiffs' proof. In *Perl* and *Travis*, all of the Appellate Division Justices concluded, as do we, that the evidence offered in support of defendants' summary judgment motions sufficed to shift to plaintiffs the burden of coming forward with evidence to raise an issue of fact. The question is whether plaintiffs met that burden. In *Adler*, the question is whether plaintiffs offered enough evidence at trial to get to the jury.

## II

The *Perl* and *Adler* cases are not related, but they are similar in a number of ways, and plaintiffs in each relied on the testimony of the same expert, Dr. Leonard Bleicher.

Perl and Adler both testified that their ability to function had been significantly limited since their accidents. Perl, 82 when the accident occurred, testified that he could no longer garden, carry packages while shopping, or have marital relations. Adler, a school teacher, testified that he could not move around easily, could not read for a long time and could not pick up his children.

We held in *Toure v Avis Rent A Car Sys.* (98 NY2d 345, 350 [2002]) that such "subjective complaints alone are not sufficient" to support a claim of serious injury; there must be "objective proof." Thus Dr. Bleicher's testimony was critical in both the *Perl* and *Adler* cases. In each case, the doctor testified that he examined the injured plaintiff shortly after the accident; that he performed a number of clinical tests, named but not fully described in the record, which were "positive"—i.e., indicated some departure from the norm; that he observed that the patient had difficulty in moving and diminished strength; and that the patient's range of motion was impaired. Bleicher

did not, at his initial examination of either Perl or Adler, quantify the range of motion he observed, except to say that Perl's was "less than 60% of normal in the cervical and lumbar spine." In each case, however, Bleicher again examined the patient several years later, using instruments to make specific, numerical range of motion measurements.

We said in *Toure*:

"In order to prove the extent or degree of physical limitation, an expert's designation of a numeric percentage of a plaintiff's loss of range of motion can be used to substantiate a claim of serious injury. An expert's *qualitative* assessment of a plaintiff's condition also may suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system" (*id.* [citations omitted]).

We need not decide here whether Bleicher's testimony would furnish legally sufficient proof of serious injury under the "qualitative" prong of *Toure*. While his observations at his initial examinations were detailed, it is debatable whether they have an "objective basis," or are simply a recording of the patients' subjective complaints. Under the "quantitative" prong of *Toure*, however, Bleicher's later, numerical measurements are sufficient to create an issue of fact as to the seriousness of Perl's and Adler's injuries.

Defendants argue that Bleicher's quantitative findings were made too long after Perl's and Adler's accidents. The Appellate Division in *Perl* agreed, holding that "plaintiffs are . . . required to demonstrate restricted range of motion based on findings both contemporaneous to the accident and upon recent findings" (*Perl v Meher*, 74 AD3d at 931 [citations omitted]). (The Appellate Division's rationale in *Adler*, though not specifically explained, is presumably the same.) *Toure*, however, imposed no such requirement of "contemporaneous" quantitative measurements, and we see no justification for it.

There is nothing obviously wrong or illogical about following the practice that Bleicher followed here—observing and recording a patient's symptoms in qualitative terms shortly after the accident, and later doing more specific, quantitative measurements in preparation for litigation. As the author of a recent article points out, a contemporaneous doctor's report is

important to proof of *causation*; an examination by a doctor years later cannot reliably connect the symptoms with the accident. But where causation is proved, it is not unreasonable to measure the *severity* of the injuries at a later time (*see* Morrissey, *'Threshold Law': Is a Contemporaneous Exam by Court of Appeals in Order?*, NYLJ, Jan. 18, 2011). Injuries can become significantly more or less severe as time passes.

Bleicher testified in *Adler* that it is the better practice to defer a precise quantitative assessment of an injury: "On initial examination when person has assorted extensive fresh recent acute injuries, then it's better to go with our visual parameters because measuring range of motion of the joint when it's acutely injured, it's not reliable. It doesn't present correct numbers." The orthopedist who testified for the defense in *Adler* did not challenge this opinion. In fact, the defense doctor acknowledged that he, like Bleicher in his initial examination, relied on visual estimates of range of motion, not on measurements with instruments.

We agree with the Appellate Division dissenters in *Perl* that a rule requiring "contemporaneous" numerical measurements of range of motion could have perverse results. Potential plaintiffs should not be penalized for failing to seek out, immediately after being injured, a doctor who knows how to create the right kind of record for litigation. A case should not be lost because the doctor who cared for the patient initially was primarily, or only, concerned with treating the injuries. We therefore reject a rule that would make contemporaneous quantitative measurements a prerequisite to recovery.

Defendants in both *Perl* and *Adler* offer alternative grounds for upholding the Appellate Division's dismissal of the complaints. We find only one of those grounds to warrant discussion: Defendants in *Perl* claim that there was insufficient evidence of a causal connection between Perl's accident and his injury. They assert that here, as in *Carrasco v Mendez* (decided with *Pommells v Perez*), defendants "presented evidence of a preexisting degenerative . . . condition causing plaintiff's alleged injuries, and plaintiff failed to rebut that evidence sufficiently to raise an issue of fact" (4 NY3d at 579).

Defendants in *Perl* did indeed present evidence, in the form of a sworn radiologist's report based on an MRI, that Perl's injuries were "degenerative in etiology and longstanding in nature, preexisting the accident." However, plaintiffs' contrary

evidence, while hardly powerful, was sufficient to raise an issue of fact. They submitted another radiologist's affidavit, saying that, while some findings from the MRI "are consistent with degenerative disease," a single MRI cannot rule out the possibility that "the patient's soft tissue findings are . . . a result of a specific trauma." That question, this radiologist said, can best be judged "by the patient's treating physician in conjunction with exam, history and any previous tests."

The treating physician, Dr. Bleicher, opined that since Perl "had not suffered any similar symptoms before the accident or had any prior injuries/medical conditions that would result in these findings," the findings were causally related to the accident. A factfinder could of course reject this opinion: It is certainly not implausible that a man of 82 would have suffered significant degenerative changes. We cannot say as a matter of law on this record, however, that such changes were the sole cause of Perl's injuries.

Though we hold plaintiffs' evidence of serious injury in both *Perl* and *Adler* to be legally sufficient, both cases have troubling features. Most striking is the sworn assertion by a defense physician who examined Perl, which in substance accuses Perl of malingering. The doctor said:

> "The fact that he sits, yet presents with a show of only 10 degrees of flexion of the lumbar spine is contradictory. His 'give-away' strength is contradictory with his ambulation. This individual's show of such decreased range of motion is totally contradicted by the fact that he followed me about, rotating the cervical spine 60 degrees and flexing at least 30 degrees. I do not believe that this individual presents with any true findings at this time."

The issue presented by this evidence, of course, is one of credibility, which is not for this Court to decide.

### III

We reach a different result in *Travis*, because we see no evidence in the record of that case of a serious injury as defined in the No-Fault Law.

Travis, like Perl and Adler, relies on the two "limitation of use" categories of the statutory definition—categories that in substance require some significant, permanent impairment. But no evidence of such an impairment is to be found—indeed we

cannot tell from the record what Travis's alleged permanent impairment is. She submitted a report from her treating physician, stating the conclusion that she has a "[m]ild partial permanent disability," but the report does not describe the disability; it says that Travis is "[c]urrently able to perform the essential functions of her job." There is no evidence that she suffered either a "permanent consequential limitation of use of a body organ or member" or a "significant limitation of use of a body function or system."

Travis relies more heavily on the category of the definition that relates to temporarily disabling conditions, claiming that she had a "medically determined injury or impairment of a non-permanent nature which prevent[ed] [her] from performing substantially all of the material acts which constitute [her] usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment." Again, however, the evidence to support the claim is lacking. Even Travis's subjective description of her injuries—which in any event would be insufficient, under *Toure*, to defeat summary judgment—does not show that there were 90 of the 180 days after the injury when she was disabled from "substantially all" of her usual activities. On the contrary, she acknowledges that she was able to do some work from home less than three months after the accident. And her doctor's reports say nothing at all about what activities she could and could not perform until, 111 days after the accident, she was found able "to perform the essential functions of her job," though with "restrictions." The record does not show any "medically determined injury" that would bring *Travis* within the "90/180" provision of the statute.

Accordingly, in *Perl v Meher*, the order of the Appellate Division should be reversed, with costs, and the order of Supreme Court denying defendants' motion for summary judgment reinstated; in *Adler v Bayer*, the order of the Appellate Division should be reversed, with costs, defendants' motion for judgment as a matter of law denied, and the case remitted to the Appellate Division for consideration of issues raised but not determined on the appeal to that court; and in *Travis v Batchi*, the order of the Appellate Division should be affirmed, with costs.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

In *Perl v Meher*: Order reversed, etc.

In *Adler v Bayer*: Order reversed, etc.

In *Travis v Batchi*: Order affirmed, with costs.