(February 21, 2012)

■ FATIMA SECK, Respondent, v MUSTAFFA BALLA et al., Appellants. [938 NYS2d 549]—

On March 17, 2007, at around 6:00 A.M., plaintiff was returning home from work as restroom attendant at Webster Hall when the livery cab she was riding in was struck from behind by a taxi cab owned by defendant Abes Service Corporation and operated by defendant Mustaffa Balla. Plaintiff was 39 years old and was four months pregnant.

An ambulance transported her to the emergency room at Bellevue Hospital, where she complained of pain in the lower back, neck, and left wrist. The hospital took X rays of her cervical spine, but was unable to X ray her lumbar spine because of her pregnancy. She was released after a few hours, with instructions to return if she continued to have problems. She returned about three or four days later, complaining of lower back pain, and was told "to do therapy and massage at home."

She began treatment with Dr. Dorina Drukman and physical therapy at Grand Central Physical Medicine, and continued until early 2008, when her insurance benefits expired. MRIs were taken of plaintiff's spine after she gave birth in September 2007.

The MRI report of her cervical spine noted "degenerative disc disease, C2-3 through C6-7," a "small Schmorl's Node at C6," and "anterior marginal hypertrophic changes involving C5 and C6." It also noted mild disc bulge at C3-4, C6-7, and C4-5, and a small disc protrusion at C5-6. Further, there was "degenerative disease of the intervertebral disc from C2-3 through C6-7 with loss of the normal cervical lordosis as well as mild flexion of [ ] the cervical curvature from C2 through C6." The MRI report of

the lumbar spine indicated "central herniation at L3-4 with extension of disc into the neural foramen bilaterally," and herniation at L4-5 and L5-S1.

Plaintiff missed two days of work immediately after the accident. The third day was her normal day off, and she returned to work on the fourth day. Although she claimed she lost time from work thereafter, she could not provide the number of work days she missed due to the accident. Rather, she testified that she could not work seven days a week, and that she worked "maybe four days" if Webster Hall was opened seven days during a particular week. She stated that as of the date of her deposition, November 20, 2008, she still felt pain, which would intensify if she worked a lot. She said she could not work as much, go to the gym, carry her 22-pound baby on her back, or do laundry by herself, and had difficulty engaging in sex with her husband.

Defendants moved for summary judgment dismissing the complaint, arguing that plaintiff had not met the "serious injury" threshold. They relied on affirmations from an orthopedist and a neurologist who performed physical examinations of plaintiff and found no limitation of movement, and on the opinion of a radiologist who asserted that the injuries shown in the MRIs were degenerative in origin rather than traumatically induced.

Although defendants assert that the claimed soft tissue injury was not caused by the accident, but was instead solely degenerative in etiology, plaintiff's treating physician asserted, to the contrary, that "notwithstanding any prior degeneration, Ms. Seck was asymptomatic. Thus the collision was a competent producing cause of her symptoms and impairments." A question of fact exists as to causation, and any questions about the credibility of the conflicting doctors' opinions are for the jury to resolve (*Perl v Meher*, 18 NY3d 208 [2011]).*

However, plaintiff's claim under the 90/180-day prong of section 5102 (d) fails as a matter of law because, according to plaintiff's own deposition testimony and the report of her treating osteopath, she returned to work part-time four days after the accident. Concur—Saxe, J.P., Friedman, Catterson, Acosta and Richter, JJ.

---

* We decline to find a triable issue of fact arising out of the nominal differences ascribed by the defendant's medical experts to what is, nevertheless, a normal range of motion.