Moore v Maley (2025 NY Slip Op 05304)

Moore v Maley

2025 NY Slip Op 05304

Decided on October 02, 2025

Appellate Division, First Department

Michael, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: October 02, 2025
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick
Sallie Manzanet-Daniels John R. Higgitt LlinÉt M. Rosado Marsha D. Michael

Index No. 22507/18|Appeal No. 4240|Case No. 2024-02148|

[*1]Christina Moore etc., et al., Plaintiffs-Respondents,
v
Charles Maley et al., Defendants, Roger Wood et al., Defendants-Appellants.

Certain defendants appeal from the order of the Supreme Court, Bronx County (Patsy Gouldborne, J.), entered March 11, 2024, which, to the extent appealed from, denied defendants Roger Wood and K&B Transportation Inc.'s motion for summary judgment dismissing the complaint as against them on the ground that plaintiff's decedent did not sustain serious injuries within the meaning of Insurance Law § 5102(d).

Lester Schwab Katz & Dwyer, LLP, New York (Thomas V. Backis and Paul M. Tarr of counsel), for appellants.
Lisa M. Comeau, Garden City, for respondents.

Michael, J. 

Defendants Roger Wood and K&B Transportation Inc. moved for summary judgment to dismiss the complaint as against them on the ground that plaintiff's decedent, Kenneth Moore (Moore), did not sustain serious injuries within the meaning of Insurance Law § 5102(d) as a result of the subject motor vehicle accident. In support of their motion, defendants established prima facie that Moore's injuries were not causally related to the subject accident by submitting evidence of Moore's myriad preexisting conditions. In opposition, however, plaintiff raised issues of fact as to causation through deposition testimony, medical records, and conflicting expert reports opining that the accident caused Moore to suffer new injuries and exacerbated his preexisting injuries. Supreme Court thus correctly denied summary judgment and we affirm.
On April 24, 2017, Moore was driving in the middle lane on the Cross Bronx Expressway with his daughter and granddaughter when his vehicle was struck from the right side by a tractor-trailer operated by defendant Roger Wood and owned by defendant K&B Transportation Inc. (collectively, defendants). The impact from the right side pushed Moore's vehicle into another tractor-trailer traveling in the left lane. The impacts caused Moore's head to strike the steering wheel and dashboard.
Moore commenced this action on February 18, 2018, alleging that defendants' negligence caused the motor vehicle accident from which he sustained serious injuries within the meaning of Insurance Law § 5102(d). Moore's initial bill of particulars, dated June 12, 2018, alleged that due to the accident, Moore suffered injuries to his cervical spine, lumbar spine,[FN1] right shoulder, and both knees, including the exacerbation of preexisting conditions. Moore's preexisting conditions included sickle-cell anemia, osteomyelitis of his cervical spine, early spinal stenosis, and prior vertebral compression fractures at C5-C6.
Unfortunately, Moore died on May 25, 2019 from complications following surgery to his cervical spine. His daughter, Christina Moore, was substituted as plaintiff and filed an amended complaint and supplemental bill of particulars alleging that Moore's death was caused by the injuries resulting from the motor vehicle accident.
Defendants moved for summary judgment dismissing the complaint. They argued that Moore's alleged injures and death were not causally related to the accident but were instead caused by his multitude of preexisting conditions — namely, sickle cell anemia and osteomyelitis of his cervical spine. In support of their motion, defendants relied on their experts' reports, medical records, and Moore's deposition testimony.
Plaintiff opposed, arguing that the evidence demonstrated that the accident caused Moore to suffer new injuries, aggravated his preexisting injures, and severely diminished his ability to manage daily living. He complained that after the accident, he developed significant neck pain and headaches; was diagnosed with cervical spine, shoulder, and knee sprains and later with myelopathy (a spinal injury); and suffered significant progression of spinal stenosis at the C2-3 level. Plaintiff argued that Moore's injures led to his rapid decline, with him ultimately losing the ability to walk or care for himself. In support of these arguments, plaintiff relied on her expert's initial and supplemental reports, medical records, and Moore's and plaintiff's deposition testimony.
Supreme Court granted defendants' motion in part. It found that defendants were entitled to summary judgment regarding the injuries to Moore's lumbar spine, which were not addressed by plaintiff's expert. However, the court denied defendants' motion as to the injuries relating to Moore's cervical spine, right shoulder, and knees, finding issues of fact as to causation.
Under Insurance Law § 5104(a), there is no right of recovery for noneconomic loss in any action between covered persons for personal injuries arising out of the negligent use or operation of a motor vehicle "except in the case of a serious injury." Insurance Law § 5102(d) defines "serious injury" as a personal injury which results in, among other things, death, a fracture, permanent consequential limitation of use of a body organ or member, significant limitation of use of a body function or system, or a "medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than [90] days during the [180] days immediately following the occurrence of the injury or impairment," also known as the 90/180 day rule.
Summary judgment "is a drastic remedy, to be granted only where the moving party has tendered sufficient evidence to demonstrate the absence of any material issues of fact" (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012] [internal quotation marks omitted]). Failure to meet this burden requires denial of the motion, regardless of the sufficiency of the opposing papers (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). Moreover, the facts must be viewed in the light most favorable to the nonmoving party (see Vega, 18 NY3d at 503). In opposing a motion for summary judgment, the nonmoving party "must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact. . . mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
To prevail on a motion for summary judgment under Insurance Law § 5102(d), the defendant must prove with competent evidence that the plaintiff's injuries are not "serious" within the meaning of the statute or that the injuries were not caused by the accident (Spencer v Golden Eagle, Inc., 82 AD3d 589, 590 [1st Dept 2011]). Thus, even where there is objective medical proof of a serious injury, "when additional contributory factors interrupt the chain of causation between the accident and claimed injury — such as a gap in treatment, an intervening medical problem or a preexisting condition — summary dismissal of the complaint may be appropriate" (Pommells v Perez, 4 NY3d 566, 572 [2005]).
However, a preexisting condition does not foreclose a finding that the plaintiff's injuries were causally related to the subject accident (Matthews v Cupie Transp. Corp., 302 AD2d 566, 567-568 [2d Dept 2003]). Where a defendant meets its prima facie burden in establishing that the preexisting condition is the cause of the plaintiff's injuries, the burden shifts to the plaintiff to present evidence addressing causation (Pommells, 4 NY3d at 580; Style v Joseph, 32 AD3d 212, 214 [1st Dept 2006]).
To meet his burden, the plaintiff must address the evidence of preexisting conditions "and explain why [his] current reported symptoms [are] not related to the preexisting conditions" or how the accident aggravated his underlying degenerative conditions (Giap v Hathi Son Pham, 159 AD3d 484, 486 [1st Dept 2018] [internal citations omitted]). For example, in McIntosh v Sisters Servants of Mary (105 AD3d 672, 673 [1st Dept 2013]), this Court held:
"The medical records [plaintiff] submitted not only showed that doctors had diagnosed her with degenerative osteoarthritic changes before the accident and that MRIs taken shortly after the accident noted disc desiccation and diffuse degenerative disc disease, but also that she was asymptomatic during the four years prior to the accident. Plaintiff also submitted the affidavit of her chiropractor who found significant limitations in range of motion of her cervical and lumbar spine immediately after and persisting after the accident. Plaintiff's neurologist made similar range of motion findings in an examination almost six years after the accident. Both doctors opined that plaintiff's injuries resulted from the accident. Moreover, her chiropractor opined that, given her 'pre-existing cervical and lumbar condition,' the injuries she sustained from the accident 'were superimposed upon her already delicate medical condition.' Thus, plaintiff's submissions and the opinions of her experts suffice to raise an issue of fact as to the significant limitations of her cervical and lumbar spine (see Perl v Meher, 18 NY3d 208, 219 [2011])."
Similarly, in Giap (159 AD3d at 486), this Court held:
"To the extent plaintiff's physicians asserted that plaintiff . . . had degenerative joint disease which was common for her age, that she was previously asymptomatic, that the accident aggravated her underlying degenerative joint disease, and that trauma increases the rate of disc desiccation, rendering her now symptomatic, this was sufficient to raise an issue of fact as to causation" (internal quotation marks omitted). 
Defendants met their prima facie burden as to Moore's cervical spine injuries by presenting evidence that those injuries existed prior to the accident (see Gjoleka v Caban, 188 AD3d 458, 458 [1st Dept 2020]; Attilio v Torres, 181 AD3d 460, 460 [1st Dept 2020]). It is undisputed that Moore was in his early 50s at the time of the accident, unemployed, and had been collecting social security disability for 30 years. Moore testified that his sickle cell disease prevented him from working and caused him to be hospitalized for "two or three weeks" at a time prior to the accident.
Pursuant to Moore's dialysis records, he was on kidney dialysis from January 2015 until his death on May 26, 2019. A consult note from April 28, 2017, four days after the accident, stated that Moore had, among other ailments, end stage renal disease with hemodialysis, a history of cocaine use, endocarditis, multiple admissions for pain crisis, osteomyelitis of the cervical spine, avascular necrosis of the bone of the left shoulder, and degenerative arthritis of the spine.
Moore testified that for years prior to the accident, he would have pain throughout his body and that he received shots for his pain. Moore's records from Montefiore Hospital, his primary treatment facility, indicate that he obtained monthly prescriptions for 30 mg tablets of oxycodone since at least September 20, 2016. Moore's daughter testified that prior to the accident, she would take Moore to the hospital regularly to get his pain medicine. Notably, defendants contend that none of the approximately 15,000 pages of records produced from Montefiore Hospital mention the motor vehicle accident, except for the emergency room records from the day of the accident.
The ER records show that Moore visited the ER at approximately 6:30 pm on the day of the accident. Moore's chief complaint was sickle cell pain crisis. He also complained of generalized body pain. No x-rays were performed of Moore's cervical spine and Moore testified that no one in the ER told him he had any broken bones or fractures of his cervical spine. In the months following the accident, medical records show that Moore was regularly admitted to the hospital due to his sickle cell disease and experienced symptoms "similar to past sickle cell pain."
Defendants submitted a report by their expert, spinal surgeon Yong Kim, M.D., who reviewed the Montefiore medical records, including but not limited to, CT scans of Moore's cervical spine dated June 2017, August 2018, and April 2019, and an MRI of the cervical spine in May 2019. Dr. Kim concluded that Moore's injuries to his cervical spine were consistent with preexisting conditions, including diffuse, multilevel degenerative changes, along with a history of osteomyelitis of his cervical spine. Dr. Kim also reviewed records relating to Moore's May 2019 surgeries performed shortly before his death and opined that the first surgery was performed to address the ongoing, progressive nature of Moore's myelopathy, "the presence of which existed prior to the subject motor vehicle accident," and that the second surgery was performed to address infection. In short, Dr. Kim concluded that neither surgery performed shortly before Moore's death was causally related to the accident. Defendants' other expert, nephrologist Jonathan Winston, M.D., concluded that Moore's death was an anticipated outcome in 2019 and that had he survived in 2019, "he would have succumbed to his disease within one year."
Simply put, defendants met their prima facie burden by establishing that the injuries to Moore's cervical spine were preexisting and not causally related to the accident (see Ledesma v Rodriguez, 217 AD3d 453, 453 [1st Dept 2023]; Massillon v Regalado, 176 AD3d 600, 600-601 [1st Dept 2019]). However, plaintiff sufficiently established questions of fact regarding whether the accident exacerbated and otherwise hastened Moore's physical decline (see Ortiz v Boamah, 169 AD3d 486, 488 [1st Dept 2019]; Giap, 159 AD3d at 486).
Specifically, Moore testified that the accident caused him to hit his head on the steering wheel and dashboard, and as a result, he experienced significant neck pain and headaches, in contrast to his usual general body aches and pain. He also reported that he had increased difficulty walking and carrying objects. His daughter testified that she lived across the street from Moore and that prior to the accident, he was "very active" and had no issues performing daily activities, even with the pain associated with his sickle cell disease. However, after the accident, his physical capabilities noticeably declined, such that she had to care for him and bathe him. Further, medical records from Moore's final hospital admission discuss his transition in the two years post-accident from using a cane, to a walker, to a wheelchair, to being bedbound.
Records from Moore's visit to the ER on the day of the accident indicate that while his chief complaint related to his sickle cell disease, he was seen in connection with the accident. The following day, Moore began receiving physical therapy, chiropractic, and acupuncture treatment for orthopedic injuries at a multispecialty facility in the Bronx. An initial evaluation by Dr. Sotelo-Garza from Warren Street Orthopedic indicated that Moore was seen in connection with the motor vehicle accident and was diagnosed with cervical and lumbar sprain, bilateral knee sprain, and bilateral shoulder sprain. Dr. Sotelo-Garza advised Moore to have physical therapy and an MRI of both shoulders and knees.
An evaluation by Bronx Chiropractic Health Services on April 25, 2017, stated that Moore was hit from the left and had headaches and constant neck pain and stiffness. He was treated there for several months. In addition, Moore saw Hao Zhang, M.D. at Preferred Medical PC on June 1, 2017, and records from that provider indicated Moore was significantly disabled from engaging in daily activities after the accident. Although Moore ceased treatment at the Bronx facility in January 2018, Moore "sought continuous, albeit different modalities of treatment since the accident" via regular hospital visits to Montefiore Hospital (Ortiz, 169 AD3d at 489).
On August 26, 2019, Moore underwent a myelogram and was diagnosed with myelopathy.[FN2] A discharge summary from Montefiore Hospital dated May 25, 2019, noted that the April 26, 2019 cervical myelogram and MRI performed on May 6, 2019, revealed "severe impingement of the [spinal] cord at C2-C3" and "severe spinal stenosis at the level of C2[-]3 and C3[-]4." As discussed above, Moore had two surgeries shortly before his death on May 26, 2019. Operative notes dated May 29, 2019 indicate that his preoperative and postoperative diagnosis was severe cervical stenosis, myelopathy, and weakness at C2-3, C3-4, and C4-5. Plaintiff maintains that these records are significant because in addition to the previous absence of myelopathy, there was no evidence that Moore suffered from significant preexisting disease at the C2-3 level as opposed to the C5-6 level.
Most notably, plaintiff submitted two expert reports by Franco Cerabona, M.D. Dr. Cerabona reviewed Moore's medical records and opined that there was no indication that Moore had any signs of myelopathy either pre-accident or initially postaccident. In particular, "[n]o myelopathic gait, hyperreflexia, clonus, ataxia, Babinski or Hoffman signs [were] documented in the medical records reviewed," contrary to defendant's expert's (Dr. Kim) conclusory opinion that the "presence of [cervical myelopathy] existed prior to the subject motor vehicle accident" (see McCree v Sam Trans Corp., 82 AD3d 601, 601 [1st Dept 2011]). Further, Dr. Cerabona compared the June 2017 CT scan with the August 2018 CT scan and opined that the latter scan showed significant progression at the C2-3 level, which "was the level with the most severe compression of the spinal cord as noted on Mr. Moore's preoperative myelogram." He noted that this assessment is consistent with defendant's expert's acknowledgment in his report that the August 2018 CT scan showed severe central stenosis at the C2-3 level.
Defendant's expert did not sufficiently contradict Dr. Cerabona's assessment that the deterioration at the upper level of Moore's cervical spine, as evidenced by the postaccident progression of stenosis at the C2-C3 level and the onset of myelopathy, was precipitated by trauma from the accident (see McIntosh, 105 AD3d at 673).
In sum, plaintiff's evidence, including conflicting expert reports; testimony as to Moore's increased pain and diminished physical capabilities; and medical records showing a new course of treatment, new diagnoses, and aggravated injuries, raised issues of fact as to whether Moore's worsened physical condition was causally related to the accident (see e.g., Ortiz, 169 AD3d at 488; Garcia v Leon, 70 AD3d 566, 566 [1st Dept 2010]; Liburd v Mondal, 215 AD3d 655, 655-656 [2d Dept 2023]; see also McCahill v New York Transp. Co., 201 NY 221, 224 [1911] ["[O]ne who has negligently forwarded a diseased condition and thereby hastened and prematurely caused death cannot escape responsibility even though the disease probably would have resulted in death at a later time without his agency"]). Additionally, plaintiff raised issues of fact as to causation with respect to injuries to Moore's right shoulder and knees. As discussed, plaintiff presented evidence that shortly after the accident, Moore complained of and sought treatment for injuries to his shoulder and knees and was diagnosed with bilateral shoulder and knee sprains and found to have decreased range of motion. As Supreme Court correctly held, defendants failed to address those allegations, warranting denial of summary judgment.
Finally, the court properly denied dismissal of the 90/180 day claim. In addition to deposition testimony describing Moore's diminished physical capabilities postaccident, plaintiff submitted records showing Moore received physical therapy and other treatment for months after the accident. Further, records show that Moore was admitted to Montefiore Hospital approximately 15 times during the six months following the accident and was confined to the hospital for no less than 163 days between the time of the accident in April 2017 until his death in May 2019. Accordingly, issues of fact exist regarding the extent to which Moore was prevented "from performing substantially all of the material acts which constitute [his] usual and customary daily activities for not less than [90] days during the [180] days immediately following the [accident]" (Insurance Law § 5102[d]).
III.
In conclusion, the decedent was plagued by comorbidities that preexisted the motor vehicle accident giving rise to this litigation and defendants understandably point to those conditions as the source of the decedent's claimed injuries. Plaintiff, however, raised the triable issues of fact identified above, warranting Supreme Court's denial of defendants' summary judgment motion. Whether plaintiff suffered new or exacerbated injuries as a result defendants' alleged negligence must be evaluated by a jury.
Accordingly, the order of the Supreme Court, Bronx County (Patsy Gouldborne, J.), entered March 11, 2024, which, to the extent appealed from, denied defendants Roger Wood and K&B Transportation Inc.'s motion for summary judgment dismissing the complaint as against them on the ground that plaintiff's decedent did not sustain serious injuries within the meaning of Insurance Law § 5102(d), should be affirmed, without costs.
Order Supreme Court, Bronx County (Patsy Gouldborne, J.), entered March 11, 2024, affirmed, without costs.
Opinion by Michael, J. All concur.
Renwick, P.J., Manzanet-Daniels, Higgitt, Rosado, Michael, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 2, 2025

Footnotes

Footnote 1: Supreme Court dismissed plaintiff's claims relating to Moore's lumbar spine injuries, which are not at issue on this appeal. 

Footnote 2: According to John Hopkins Medicine, "Myelopathy is an injury to the spinal cord due to
severe compression that may result from trauma, congenital stenosis, degenerative disease or disc
herniation" (https://www.hopkinsmedicine.org/health/conditions-and-diseases/myelopathy [last accessed June 11, 2025]).