# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**294**
**CA 11-02068**
PRESENT: CENTRA, J.P., CARNI, LINDLEY, SCONIERS, AND MARTOCHE, JJ.

---

MICHEL D. TYSON, PLAINTIFF-APPELLANT,

V                                          MEMORANDUM AND ORDER

LAWRENCE NAZARIAN, DEFENDANT-RESPONDENT.

---

PARISI & BELLAVIA, ROCHESTER (TIMOTHY C. BELLAVIA OF COUNSEL), FOR PLAINTIFF-APPELLANT.

BURGIO, KITA & CURVIN, BUFFALO (HILARY C. BANKER OF COUNSEL), FOR DEFENDANT-RESPONDENT.

---

Appeal from an order and judgment (one paper) of the Supreme Court, Monroe County (Thomas A. Stander, J.), entered August 15, 2011 in a personal injury action. The order and judgment granted the motion of defendant for summary judgment, dismissed the complaint and denied the motion and cross motion of plaintiff for summary judgment.

It is hereby ORDERED that the order and judgment so appealed from is affirmed without costs.

Memorandum: Plaintiff commenced this action seeking damages for injuries she allegedly sustained when a vehicle operated by defendant collided with her vehicle in March 2008. According to plaintiff, her prior back and neck injuries were exacerbated by the accident. Supreme Court properly granted defendant's motion for summary judgment dismissing the complaint on the ground that plaintiff did not sustain a serious injury within the meaning of Insurance Law § 5102 (d) and denied plaintiff's "motion and cross motion" for summary judgment on the issues of negligence and serious injury. Defendant met his initial burden on the motion "by submitting medical records and reports constituting 'persuasive evidence that plaintiff's alleged pain and injuries were related to . . . preexisting condition[s]' " rather than the 2008 accident (*Spanos v Fanto*, 63 AD3d 1665, 1666). Plaintiff's medical records demonstrated that she sustained injuries from a March 2002 motor vehicle accident. Plaintiff complained to her medical providers of severe neck and lower back pain after the 2002 accident and, in May 2006, she underwent a spinal fusion. In November 2006 she obtained Social Security disability benefits for a " 'severe' impairment" consisting of "lumbar back problems and status post surgery, with chronic pain." Plaintiff continued to complain of neck pain and lower back pain until the date of the 2008 accident.

Defendant also submitted the report of a physician who reviewed

plaintiff's medical records and examined her on defendant's behalf. The physician opined that "[t]he symptoms that [plaintiff] had before [and after] March . . . 2008 . . . are essentially one in the same," and that there were no new abnormalities or disc problems attributable to the 2008 accident. Defendant submitted the affirmation of another physician who reviewed plaintiff's medical records at defendant's request, and he also concluded that plaintiff's "imaging studies that were performed prior to and subsequent to the [2008] accident . . . are essentially the same[, and her] cervical spine and lumbar spine complaints prior to and subsequent to the [2008] motor vehicle accident . . . are virtually the same." In addition, defendant submitted the affirmation of a third physician who reviewed plaintiff's diagnostic films, and he too found no evidence of a traumatic injury to the spine attributable to the 2008 accident.

The burden therefore shifted to plaintiff "to come forward with evidence addressing defendant's claimed lack of causation" (*Carrasco v Mendez*, 4 NY3d 566, 580). Plaintiff submitted the affidavit of her treating physician, who noted "a significant disc herniation broad based with foraminal encroachment at L4-L5" on an MRI performed after the 2008 accident and recommended surgery. In April 2009 he performed "an acute discectomy at L4-5 with posterior lumbar interbody fusion to repair the L4-5," but plaintiff continued to have back pain after the surgery. Plaintiff's treating physician opined that the 2008 accident caused the "large lumbar disc herniation at L4-5" and accounted for a persistent worsening of her pain symptoms. Although that affirmation was sufficient to raise a triable issue of fact concerning the existence of a new injury, plaintiff failed to raise a triable issue of fact whether she had any new physical symptoms, i.e., worsening of her pain or limitations, that were attributable to the 2008 accident. Once defendant met his initial burden, plaintiff's treating physician was required "to adequately address plaintiff's preexisting . . . condition" (*Franchini v Palmieri*, 1 NY3d 536, 537). In light of the evidence submitted by defendant establishing that plaintiff had no new symptoms or pain complaints after the 2008 accident, plaintiff was required to offer some explanation with respect to how her current limitations were caused by that accident rather than the preexisting condition. In the event that plaintiff's treating physician was unable to do so by giving a quantitative comparison of plaintiff's limitations before and after the 2008 accident, he was required to give a qualitative comparison (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 350-351). Here, however, he failed to provide either comparison. His statement that plaintiff had a "persistent worsening" of symptoms was conclusory, and he "failed to refute the opinion of defendant's expert[s] that plaintiff did not sustain a functional disability or limitation related to the [2008] accident by, for example, comparing plaintiff's pre- and post-accident range of motion restrictions in her neck or back or assessing her pre- and post-accident qualitative limitations" (*Overhoff v Perfetto*, 92 AD3d 1255, 1256).

In light of our determination, we do not address plaintiff's contention that she is entitled to summary judgment on the issue of defendant's negligence.

All concur except SCONIERS and MARTOCHE, JJ., who dissent and vote to modify in accordance with the following Memorandum: We respectfully dissent because we conclude that there are issues of fact with respect to whether plaintiff sustained a serious injury under the categories for "permanent consequential limitation of use of a body organ or member" and "significant limitation of use of a body function or system" within the meaning of Insurance Law § 5102 (d) as a result of the subject March 2008 accident (hereafter, 2008 accident). While plaintiff clearly suffered a serious injury to her back in 2002 that resulted in surgery in 2006, as well as significant ongoing pain and limitations, the evidence submitted by plaintiff in opposition to defendant's motion for summary judgment dismissing the complaint was sufficient to raise issues of fact with respect to whether plaintiff also sustained a serious injury in the 2008 accident.

In his affidavit, plaintiff's treating surgeon determined that an MRI taken after the 2008 accident "revealed a significant disc herniation broad based with foraminal encroachment at L4-[]5," which did not appear on several pre-accident lumbar spine MRIs. He opined "to a reasonable degree of medical certainty that the [2008] accident [caused that] large lumbar disc herniation at L4-5[ and] account[ed] for a persistent worsening of [plaintiff's] pain symptoms." The treating surgeon further concluded that plaintiff's "pain symptoms, physical limitations and limitations with respect to activities of daily life caused by her lumbar large disc herniation at L4-5 should be considered both permanent and the direct result of the [2008] accident . . . ." He stated that the "traumatic injury to [plaintiff's] lumbar spine at L4-[]5 . . . necessitated surgery, [i.e.,] an acute discectomy at L4-5 with posterior lumbar interbody fusion."

Another of plaintiff's treating physicians compared her 2006 and 2008 MRIs, noting that the 2008 MRI "revealed a new disc herniation at L4-5." That physician opined that the 2008 accident resulted in both the L4-5 herniation and "an exacerbation of [plaintiff's] pre[]existing condition at L5-S1," which caused "increased symptoms and new symptoms . . . from which [plaintiff now] suffers." The physician further stated that those symptoms affected "any activities of daily life which require standing, sitting or walking for more than a brief period of time." In addition, in her reply papers, plaintiff submitted the report of a physician who examined plaintiff on behalf of her insurance company and found that plaintiff's "conditions are causally related to the [2008] accident" and that, if she was employed, her restrictions would include no prolonged positioning of the neck, overhead reaching, repetitive reaching, bending, twisting, stooping or lifting of greater than 15 to 20 pounds. Moreover, one of the physicians who examined plaintiff on behalf of defendant's insurance company opined, after his first examination of plaintiff, "that 75% of [plaintiff's] current disability with respect to the neck and back is due to the injury [resulting from the 2008 accident] and 25% [is] due to the prior injury and the documented disc abnormalities that were noted after the injury of 2002." While that physician later asserted that such opinion was expressed before he was fully and accurately informed of the extent of plaintiff's physical condition

prior to the 2008 accident, the physician's repudiation of his prior opinion presents an issue for the finder of fact.

Based on that evidence and other evidence in the record, we conclude that plaintiff presented objective proof in evidentiary form that she sustained a new injury in the 2008 accident and, in addition to the pain and limitations caused by that new injury, plaintiff lost all movement of her spine at L4-5 as a result of surgery in 2009 and suffered residual pain and limitations resulting from that surgery. While "an expert's designation of a numeric percentage of a plaintiff's loss of range of motion can be used to substantiate a claim of serious injury . . . [, an] expert's *qualitative* assessment of a plaintiff's condition also may suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system" (*Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 350). We conclude that the evidence submitted by plaintiff in opposition to defendant's motion was sufficient to raise issues of fact based on that standard. Moreover, we fear that the majority's conclusion to the contrary sets an almost impossible standard for persons with preexisting injuries and conditions to have their cases heard by a jury when those persons are injured in subsequent motor vehicle accidents.

In *Perl v Meher* (18 NY3d 208, 214), the Court of Appeals, quoting its decision in *Pommells v Perez* (4 NY3d 566, 571), noted that "[n]o-fault abuse still abounds today" and "that many courts, including ours, approach claims that soft-tissue injuries are 'serious' with a 'well-deserved skepticism.' " Nevertheless, in two of the three cases decided under *Perl*, the Court concluded that "the evidence [the] plaintiffs . . . put forward [was] legally sufficient" and that "the role of skeptic is properly reserved for the finder of fact" (18 NY3d at 215). Specifically, the Court held that the "plaintiffs' evidence of serious injury in [those two cases was] legally sufficient, [even though] both cases have troubling features" (*id*. at 219), which in one case included the sworn assertion by a defense physician accusing the plaintiff of malingering. Nevertheless, "[t]he issue presented by [such] evidence, of course, is one of credibility, which is not for this Court to decide" (*id*.). Moreover, the Court in *Perl* determined that "a rule requiring 'contemporaneous' numerical measurements of range of motion could have perverse results[ because p]otential plaintiffs should not be penalized for failing to seek out, immediately after being injured, a doctor who knows how to create the right kind of record for litigation" (*id*. at 218). The Court "therefore reject[ed] a rule that would make contemporaneous quantitative measurements a prerequisite to recovery" (*id*.). The extraordinary burden the majority appears to be placing on automobile accident plaintiffs who have preexisting injuries or conditions "could have [even more] perverse results" by penalizing plaintiffs for not being prepared at all times with " 'contemporaneous' numerical measurements of [their] range of motion" (*id*.), inasmuch as no one can ever know if or when an automobile accident is going to occur. While the majority is understandably skeptical of the plaintiff's serious injury claims, as well as her credibility, this is one case where "the

role of skeptic is properly reserved for the finder of fact" (*id.* at 215).

Given the result reached by our colleagues in the majority, they understandably did not address the merits of plaintiff's contention that she is entitled to partial summary judgment on the issue of defendant's negligence.  However, given that defendant turned left in front of plaintiff, who had the right-of-way, there can be no doubt that the evidence establishes as a matter of law that defendant was negligent and that his negligence was the sole proximate cause of the 2008 accident (*see Rogers v Edelman*, 79 AD3d 1803, 1804; *Guadagno v Norward*, 43 AD3d 1432, 1433).  We would therefore modify the order and judgment by denying those parts of defendant's motion for summary judgment dismissing plaintiff's claims under the permanent consequential limitation of use and significant limitation of use categories of serious injury and granting that part of plaintiff's "motion and cross motion" for partial summary judgment on the issue of defendant's negligence.

Entered:  June 8, 2012                          Frances E. Cafarell
                                                 Clerk of the Court