Sconiers and Martoche, JJ.
(dissenting). We respectfully dissent because we conclude that there are issues of fact with respect to whether plaintiff sustained a serious injury under the categories for “permanent consequential limitation of use of a body organ or member” and “significant limitation of use of a body function or system” within the meaning of Insurance Law § 5102 (d) as a result of the subject March 2008 accident (hereafter, 2008 accident). While plaintiff clearly suffered a serious injury to her back in 2002 that resulted in surgery in 2006, as well as significant ongoing pain and limitations, the evidence submitted by plaintiff in opposition to defendant’s motion for summary judgment dismissing the complaint was sufficient to raise issues of fact with respect to whether plaintiff also sustained a serious injury in the 2008 accident.
In his affidavit, plaintiffs treating surgeon determined that an MRI taken after the 2008 accident “revealed a significant disc herniation broad based with foraminal encroachment at L4-[ ]5,” which did not appear on several pre-accident lumbar spine MRIs. He opined “to a reasonable degree of medical certainty that the [2008] accident [caused that] large lumbar disc herniation at L4-5[and] accounted] for a persistent worsening of [plaintiffs] pain symptoms.” The treating surgeon further concluded that plaintiffs “pain symptoms, physical limita *1352 tions and limitations with respect to activities of daily life caused by her lumbar large disc herniation at L4-5 should be considered both permanent and the direct result of the [2008] accident. . . He stated that the “traumatic injury to [plaintiff’s] lumbar spine at L4-[ ]5 . . . necessitated surgery, [i.e.,] an acute discectomy at L4-5 with posterior lumbar interbody fusion.”
Another of plaintiffs treating physicians compared her 2006 and 2008 MRIs, noting that the 2008 MRI “revealed a new disc herniation at L4-5.” That physician opined that the 2008 accident resulted in both the L4-5 herniation and “an exacerbation of [plaintiff’s] pre[ ]existing condition at L5-S1,” which caused “increased symptoms and new symptoms . . . from which [plaintiff now] suffers.” The physician further stated that those symptoms affected “any activities of daily life which require standing, sitting or walking for more than a brief period of time.” In addition, in her reply papers, plaintiff submitted the report of a physician who examined plaintiff on behalf of her insurance company and found that plaintiffs “conditions are causally related to the [2008] accident” and that, if she was employed, her restrictions would include no prolonged positioning of the neck, overhead reaching, repetitive reaching, bending, twisting, stooping or lifting of greater than 15 to 20 pounds. Moreover, one of the physicians who examined plaintiff on behalf of defendant’s insurance company opined, after his first examination of plaintiff, “that 75% of [plaintiffs] current disability with respect to the neck and back is due to the injury [resulting from the 2008 accident] and 25% [is] due to the prior injury and the documented disc abnormalities that were noted after the injury of 2002.” While that physician later asserted that such opinion was expressed before he was fully and accurately informed of the extent of plaintiffs physical condition prior to the 2008 accident, the physician’s repudiation of his prior opinion presents an issue for the finder of fact.
Based on that evidence and other evidence in the record, we conclude that plaintiff presented objective proof in evidentiary form that she sustained a new injury in the 2008 accident and, in addition to the pain and limitations caused by that new injury, plaintiff lost all movement of her spine at L4-5 as a result of surgery in 2009 and suffered residual pain and limitations resulting from that surgery. While “an expert’s designation of a numeric percentage of a plaintiffs loss of range of motion can be used to substantiate a claim of serious injury . . . [, an] expert’s qualitative assessment of a plaintiff’s condition also may suffice, provided that the evaluation has an objective basis and compares the plaintiffs limitations to the normal function, *1353 purpose and use of the affected body organ, member, function or system” (Toure v Avis Rent A Car Sys., 98 NY2d 345, 350 [2002]). We conclude that the evidence submitted by plaintiff in opposition to defendant’s motion was sufficient to raise issues of fact based on that standard. Moreover, we fear that the majority’s conclusion to the contrary sets an almost impossible standard for persons with preexisting injuries and conditions to have their cases heard by a jury when those persons are injured in subsequent motor vehicle accidents.
In Perl v Meher (18 NY3d 208, 214 [2011]), the Court of Appeals, quoting its decision in Pommells v Perez (4 NY3d 566, 571 [2005]), noted that “[n]o-fault abuse still abounds today” and “that many courts, including ours, approach claims that soft-tissue injuries are ‘serious’ with a ‘well-deserved skepticism.’ ” Nevertheless, in two of the three cases decided under Perl, the Court concluded that “the evidence [the] plaintiffs . . . put forward [was] legally sufficient” and that “the role of skeptic is properly reserved for the finder of fact” (18 NY3d at 215). Specifically, the Court held that the “plaintiffs’ evidence of serious injury in [those two cases was] legally sufficient, [even though] both cases have troubling features” {id. at 219), which in one case included the sworn assertion by a defense physician accusing the plaintiff of malingering. Nevertheless, “[t]he issue presented by [such] evidence, of course, is one of credibility, which is not for this Court to decide” {id.). Moreover, the Court in Perl determined that “a rule requiring ‘contemporaneous’ numerical measurements of range of motion could have perverse results[because potential plaintiffs should not be penalized for failing to seek out, immediately after being injured, a doctor who knows how to create the right kind of record for litigation” {id. at 218). The Court “therefore reject[ed] a rule that would make contemporaneous quantitative measurements a prerequisite to recovery” {id.). The extraordinary burden the majority appears to be placing on automobile accident plaintiffs who have preexisting injuries or conditions “could have [even more] perverse results” by penalizing plaintiffs for not being prepared at all times with “ ‘contemporaneous’ numerical measurements of [their] range of motion” {id.), inasmuch as no one can ever know if or when an automobile accident is going to occur. While the majority is understandably skeptical of the plaintiffs serious injury claims, as well as her credibility, this is one case where “the role of skeptic is properly reserved for the finder of fact” {id. at 215).
Given the result reached by our colleagues in the majority, they understandably did not address the merits of plaintiffs *1354 contention that she is entitled to partial summary judgment on the issue of defendant’s negligence. However, given that defendant turned left in front of plaintiff, who had the right-of-way, there can be no doubt that the evidence establishes as a matter of law that defendant was negligent and that his negligence was the sole proximate cause of the 2008 accident (see Rogers v Edelman, 79 AD3d 1803, 1804 [2010]; Guadagno v Norward, 43 AD3d 1432, 1433 [2007]). We would therefore modify the order and judgment by denying those parts of defendant’s motion for summary judgment dismissing plaintiffs claims under the permanent consequential limitation of use and significant limitation of use categories of serious injury and granting that part of plaintiffs “motion and cross motion” for partial summary judgment on the issue of defendant’s negligence. Present — Centra, J.P., Carni, Bindley, Sconiers and Martoche, JJ.