■ GARO KAHVEJIAN, Respondent, v URSULA A. PARDO, Appellant. [4 NYS3d 133]—

In an action to recover damages for personal injuries, the defendant appeals from a judgment of the Supreme Court, Rockland County (Alfieri, Jr., J.), dated May 2, 2013, which, upon, among other things, an order of the same court dated August 9, 2012, inter alia, denying those branches of her motion pursuant to CPLR 4404 (a) which were to set aside a jury verdict finding that the plaintiff sustained a serious injury within the meaning of Insurance Law § 5102 (d) as a result of the subject accident and for judgment as a matter of law on that issue, or, in the alternative, to set aside the verdict as to that issue as contrary to the weight of the evidence and for a new trial, and granting that branch of her motion which was to set aside as excessive the verdict awarding the plaintiff damages in the principal sums of $50,000 for past pain and suffering and $750,000 for future pain and suffering only to the extent of granting a new trial on the issue of damages for future pain and suffering unless the plaintiff stipulated to a reduction of that award to the principal sum of $375,000, is in favor of the plaintiff and against her in the principal sums of $50,000 for past pain and suffering and $375,000 for future pain and suffering.

Ordered that the judgment is affirmed, with costs.

The plaintiff was involved in an automobile accident on January 24, 2009. At that time, he was 48 years old and owned a jewelry store. He commenced this action to recover damages for personal injuries. After the Supreme Court issued a directed verdict in favor of the plaintiff on the issue of liability, the matter proceeded to trial on the issue of damages.

At the damages trial, the plaintiff testified that, upon impact, his knees went under the dashboard of his car. He did not receive medical treatment at the scene of the accident because he did not want to leave unattended the jewelry he had with

him from his jewelry store. When the pain in his knees and left hip did not subside, he saw physician Barry Kraushaar on February 5, 2009.

Kraushaar examined the plaintiff and made findings of tenderness in the shoulder blade and lower back, both knees, and left hip, consistent with pressure from the seat belt across his lap and left hip. Kraushaar took X rays, which did not reveal any fractures. His initial diagnosis was that the plaintiff had bursitis of the left hip. He ordered a magnetic resonance imaging examination (hereinafter MRI), and upon reviewing the MRI films, diagnosed the plaintiff with avascular necrosis of the left hip, meaning a loss of blood supply causing the death of a portion of the bone. Based upon his diagnosis of avascular necrosis, Kraushaar prescribed crutches in order to give the hip a chance to heal itself. The plaintiff saw Kraushaar again on May 12, 2009, but did not come back again until two years later, in May 2011. Meanwhile, the plaintiff went to another doctor for a second opinion concerning his left hip.

In 2011, Kraushaar tested the range of motion in the plaintiff's left hip by asking the plaintiff to move his leg. Flexion was 110 degrees, while Kraushaar testified that 130 degrees is normal. Internal rotation was 0 degrees, while he testified 45 degrees is normal. External rotation was 45 degrees, while he testified that 60 degrees is normal. A loss of range of motion was confirmed by a witness for the defense, physician Marc Berezin. Kraushaar testified that, at this point, the injury to the left hip was considered permanent because it did not improve itself, and the only alternative to living with the problem would be a hip replacement.

On the question of whether the plaintiff's condition was caused by the accident, Kraushaar testified, "I cannot say with 100% certainty that the accident caused avascular necrosis," but that "there is reason to believe that the accident caused the avascular necrosis," and "a reasonable degree of medical probability" that the accident caused the condition. Kraushaar noted that the plaintiff was very active before the accident, and presented himself at an early stage of the diagnosis. Kraushaar explained that, if the plaintiff had presented himself at stages three or four of his condition, Kraushaar would not have believed that the accident had caused it, because it takes "awhile" to get to those stages. Therefore, according to Kraushaar, the injury had to have been sustained relatively recently before the MRI was taken. In Kraushaar's opinion, the plaintiff had traumatized his kneecaps by hitting them against the dashboard of his car during the accident,

which shoved the ball of his hip into the socket and damaged the hip joint. Kraushaar further testified that he prescribed physical therapy when he thought the plaintiff had bursitis. Physical therapy would not have resolved the problem of blood flow to the hip.

Defense witness Berezin testified that it would be impossible for anyone to ascertain with 100% certainty whether the plaintiff had avascular necrosis of the left hip based on the MRI films. He opined that the plaintiff had osteoarthritis, which takes a long time to develop. Defense witness Jessica Berkowitz, a diagnostic radiologist, diagnosed the plaintiff's condition as osteoarthritis, based upon her review of the MRI films.

The jury found that the plaintiff had sustained a serious injury within the meaning of Insurance Law § 5102 (d) as a result of the subject accident and awarded him damages in the principal sums of $50,000 for past pain and suffering and $750,000 for future pain and suffering. After the defendant moved to set aside the verdict, the award for future pain and suffering was reduced to the principal sum of $375,000.

The Court of Appeals has explicitly held that there is no requirement to prove quantitative measurements of range of motion " 'contemporaneous' " to the accident (*Perl v Meher*, 18 NY3d 208, 217 [2011]), although a contemporaneous medical report as to injuries is important proof of causation (*see Griffiths v Munoz*, 98 AD3d 997, 999 [2012]). In this case, there was a qualitative assessment of the plaintiff's condition based upon an MRI scan, i.e., that the plaintiff was suffering from avascular necrosis. The fact that he did not lose complete use of his hip does not mean he did not sustain a serious injury within the meaning of Insurance Law § 5102 (d), since a "permanent consequential limitation of use of a body organ or member" is sufficient to establish serious injury (Insurance Law § 5102 [d]; *cf. DiCariano v County of Rockland*, 111 AD3d 879, 881 [2013]).

On the issue of proximate cause, Kraushaar testified that there was "a reasonable degree of medical probability" that the plaintiff's permanent limitation in the use of his left hip was caused by the accident. The usual language is "to a reasonable degree of medical certainty," but the phrase "degree of medical certainty" has been deemed sufficient (*see Matott v Ward*, 48 NY2d 455, 459 [1979]). In *Matott*, the Court of Appeals held that the relevant inquiry is "whether it is 'reasonably apparent' that 'the doctor intends to signify a probability supported by some rational basis' " (*id.* at 461, quoting *Matter of Miller v*

*National Cabinet Co.*, 8 NY2d 277, 282 [1960]). Here, the phrase "reasonable degree of medical probability" satisfied that standard. It should also be noted that that language is the statutory standard in New Jersey for determining if there is sufficient evidence of serious injury to sue for noneconomic loss (NJ Stat Ann § 39:6A-8 [a]; *see King v Car Rentals, Inc.*, 29 AD3d 205, 207 n 2 [2006]). Further, Kraushaar explained the foundation for his opinion, noting that the plaintiff initially appeared at an early stage of his condition immediately after the accident, and that his condition progressed thereafter (*cf. Scott v Aponte*, 49 AD3d 1131 [2008]). Thus, his opinion was supported by a rational basis (*see Matott v Ward*, 48 NY2d at 461).

In view of the foregoing, there was a rational process by which the jury could have found that the plaintiff sustained a serious injury within the meaning of Insurance Law § 5102 (d) as a result of the subject accident, and the verdict as to that issue was based upon a fair interpretation of the evidence (*see Siddiqua v Anarella*, 120 AD3d 793 [2014]; *Nicastro v Park*, 113 AD2d 129 [1985]). Thus, the Supreme Court properly declined to set aside the verdict as to that issue.

Further, the awards of $50,000 for past pain and suffering and $375,000 for future pain and suffering were not excessive, as they did not deviate materially from what would be reasonable compensation (*see* CPLR 5501 [c]; *Victor v New York City Tr. Auth.*, 112 AD3d 523 [2013]). Balkin, J.P., Chambers, Hinds-Radix and Maltese, JJ., concur.