Yar v Singh (2024 NY Slip Op 51577(U))

[*1]

Yar v Singh

2024 NY Slip Op 51577(U)

Decided on November 19, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 19, 2024
Supreme Court, Kings County

Muhammad Yar, Plaintiff,

against
Malkiat Singh, Defendant.

Index No. 503689/2020

Sutton & Smyth, LLP, New York City (Michael J. Lezamiz & Daniel E. Smyth of counsel), for plaintiff. 
McGivney Kluger Clark & Intoccia, P.C., New York City (Stephen B. Toner of counsel), for defendant. 

Aaron D. Maslow, J.

This is an action for personal injuries resulting from a motor vehicle accident in which Defendant Malkiat Singh ("Defendant") was found liable for striking the rear of the vehicle Plaintiff Muhammad Yar ("Plaintiff") operated on October 21, 2019, on the Van Wyck Expressway within John F. Kennedy International Airport located in Queens, New York. The Court previously directed judgment against Defendant on the issue of liability at the close of the liability phase of the trial (see Yar v Singh, 84 Misc 3d 1218[A], 2024 NY Slip Op 51474[U] [Sup Ct, Kings County 2024]).
The damages phase of the trial commenced yesterday, November 18, 2024. Plaintiff adduced testimony from two witnesses: himself and Dr. Barry Katzman. Today, after Plaintiff rested, Defendant moved to dismiss the action on the ground that Plaintiff failed to make out a prima facie case of a serious injury. This decision determines said motion.
"To be entitled to judgment as a matter of law, 'the defendant-movant must demonstrate that the plaintiff failed to make out a prima facie case; the plaintiff's evidence must be accepted as true, and the plaintiff must be given the benefit of every favorable inference which can be reasonably drawn from the evidence' (Campbell v Rogers & Wells, 218 AD2d 576, 580 [1995]; see Napolitano v Dhingra, 249 AD2d 523, 524 [1998])" (Posner v New York City Tr. Auth., 27 AD3d 542, 543 [2d Dept 2006]).
Insofar as is pertinent herein, "there shall be no right of recovery for non-economic loss, except in the case of a serious injury" (Insurance Law § 5104 [a]). Serious injury is defined by [*2]nine categories. In the case at bar, Plaintiff contends that he met two category thresholds: "permanent consequential limitation of use of a body organ or member [and] significant limitation of use of a body function or system" (id. § 5102 [b]).
In 2002, the Court of Appeals stated:
This Court has long recognized that the "legislative intent underlying the No-Fault Law was to weed out frivolous claims and limit recovery to significant injuries" (Dufel v Green, 84 NY2d 795, 798 [1995]; see also Licari v Elliott, 57 NY2d 230, 234-235 [1982]). As such, we have required objective proof of a plaintiff's injury in order to satisfy the statutory serious injury threshold (see e.g. Dufel, 84 NY2d at 798; Lopez v Senatore, 65 NY2d 1017, 1020 [1985]); subjective complaints alone are not sufficient (see e.g. Gaddy v Eyler, 79 NY2d 955, 957-958 [1992]; Scheer v Koubek, 70 NY2d 678, 679 [1987]). In order to prove the extent or degree of physical limitation, an expert's designation of a numeric percentage of a plaintiff's loss of range of motion can be used to substantiate a claim of serious injury (see e.g. Dufel, 84 NY2d at 798; Lopez, 65 NY2d at 1020). An expert's qualitative assessment of a plaintiff's condition also may suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system (see Dufel, 84 NY2d at 798). When supported by objective evidence, an expert's qualitative assessment of the seriousness of a plaintiff's injuries can be tested during cross-examination, challenged by another expert and weighed by the trier of fact. By contrast, an expert's opinion unsupported by an objective basis may be wholly speculative, thereby frustrating the legislative intent of the No-Fault Law to eliminate statutorily-insignificant injuries or frivolous claims. (Toure v Avis Rent A Car Sys., 98 NY2d 345, 350-351 [2002].)
Later, in 2011, the Court of Appeals stated the following:
No-fault abuse still abounds today. In 2010, no-fault accounted for 53% of all fraud reports received by the Insurance Department (Annual Report to the Governor and the Legislature of the State of New York on the Operations of the Insurance Frauds Prevention Act at 23). "Serious injury" claims are still a source of significant abuse, and it is still true, as it was in 2005, that many courts, including ours, approach claims that soft-tissue injuries are "serious" with a "well-deserved skepticism" (Pommells, 4 NY3d at 571). (Perl v Meher, 18 NY3d 208, 214 [2011].)
At trial Plaintiff testified in pertinent part as follows: The accident involved a heavy impact from Defendant's hitting him in the rear. His head hit the steering wheel. He was taken to the hospital in an ambulance. Plaintiff claimed injuries to the head, left shoulder, and lower back from the accident.[FN1]
He cannot move his shoulder the same; he is limited to 60%. He has daily shoulder pain.
Prior to the accident he used to go to the gym, lifted weights, and played cricket and handball. Following the accident including the post-accident February 10, 2020 left shoulder surgery, he could no longer do so. His shoulder hurts every day and he cannot bend too much due to back pain. After the accident he drove with one hand. These problems did not exist before the accident.
Plaintiff underwent treatment with S & R Medical P.C. ("S & R Medical") and had shoulder surgery. While he did not recall the doctor who performed the shoulder surgery, records show it was Dr. Victor Katz. At the end of physical therapy in September or October of 2020, his shoulder and lower back pain was better.
Plaintiff was involved in another accident, on September 2, 2021. The car was totaled. He did not remember details about any claims made in connection with that accident.
Plaintiff now has his own company through which he performs work as an electrician. He sometimes still drives for Uber, which is what he did at the time of the accident.
Dr. Barry Katzman, a board certified orthopedic surgeon testified on behalf of Plaintiff yesterday, November 18, 2024. While he testified, Plaintiff's medical records were entered into evidence. This included records from Jamaica Hospital, to where Plaintiff was transported after the subject accident; MRI films; S & R medical exam reports, prescriptions for PT, PT notes, etc.; and Dr. Victor Katz's exam reports and surgical report.
Dr. Katzman examined Plaintiff once, on October 15, 2022; he did not treat Plaintiff. He described the history taken from Plaintiff. He explained to the jury shoulder pathology. When examined, Plaintiff had pain over the rotator cuff in the left shoulder and flexion was 150 degrees out of a normal of 180 degrees. In the lower back (lumbar spine), Plaintiff achieved bending (flexion) to 70 out of 90 degrees and extension to 20 out of 30 degrees. Plaintiff reached maximum medical improvement. No further left shoulder surgery would help him. Plaintiff did sustain permanent injuries to his left shoulder and lower back. Dr. Katzman testified that Jamaica Hospital records did not show complaints of pain to the left shoulder. Dr. Katzman was not aware of the subsequent September 2, 2021 car accident. He would want to know about it.
The Court has reviewed the documentary evidence concerning examinations of Plaintiff at S & R Medical, PT treatment, PT prescriptions, and other matters. Pertinently they show the following in terms of examinations by Dr. Yvette Davidoff: Reduced range of motion in the cervical, thoracic, and lumbar spine areas and in the left shoulder, without any designation of degrees achieved, were recorded on December 2, 2019; January 6, 2020; January 27, 2020; March 2, 2020; June 1, 2020; July 1, 2020; August 12, 2020; September 14, 2020; and October 21, 2020.[FN2]

The exam report from October 21, 2020 did have at the bottom range of motion test results but they do not indicate which body parts these results pertain to. There are sets of numbers but the achieved and normal degrees are not specified; it would be speculative that the initial number is what was achieved and the second number is the norm.
In any event, none of these S & R Medical exam reports, including the October 21, 2020 one, demonstrate that a goniometer, or any other objective tool, was used to record the range of [*3]motion results.[FN3]
Neither did Dr. Katzman testify that he used a goniometer or any other objective instrument to assess range of motion.
The Court notes a January 7, 2020 report from Dr. Vladimir Gressel, in which degrees achieved on range of motion were recorded for the lumbar (and cervical) spine, but there are no norms indicated; there is no indication of use of a goniometer or other objective measuring tool.
Straight Leg Raise test results are set forth in records but nowhere is there a recording of the degrees achieved coupled with what would be normal.
The Court also reviewed Dr. Victor Katz's reports, which concerned Plaintiff's left shoulder. On December 23, 2019 and on February 21, 2020, flexion was 0-160 out of 0-180, internal rotation was to L4, and external rotation was at 60 out of 90. There is no indication of testing with a goniometer or another objective measuring tool. The December 23, 2019 report is not signed. A May 18, 2020 telemedicine exam report contains the same range of motion results, but there is no indication of the use of a goniometer or other objective measuring tool; this report is not signed.
In fact,after reviewing the S & R Medical evidence and that from Dr. Katz, there is no signed report showing use of a goniometer to measure range of motion. Laying aside the issue of there being no goniometer, the only range of motion test results for specific body parts with achieved degrees compared to normal degrees are contained in Dr. Victor Katz's December 23, 2019 report which was unsigned, and in his February 21, 2020 report which was signed. And, in terms of testimony (which would not need a signature), there was Dr. Katzman's findings on October 15, 2022 of left shoulder flexion of 150/180 degrees, lumbar bending of 70/90 degrees and lumbar extension of 20/30 degrees. Hence, in terms of signed reports or live testimony, there is only one recordation of lumbar spine limitation, but without evidence that it was objectively measured. There are two recordations of left shoulder flexion (February 21, 2020 and October 15, 2022), again without evidence that they were objectively measured.[FN4]

At best for Plaintiff it might be said that limitations on one day were testified to — by Dr. Katzman. That is insufficient (see Estrella v GEICO Ins. Co., 102 AD3d 730 [2d Dept. 2013]; Letellier v Walker, 222 AD2d 658 [2d Dept 1995]); Beckett v Conte, 176 AD2d 774 [2d Dept 1991]; Partlow v Meehan, 155 AD2d 647 [2d Dept 1989]).
Where causation is proved, the doctor who notes qualitative positive findings shortly after the accident need not set forth quantitative findings then, as such can be provided years later; contemporary quantitative measurements are not a prerequisite to recovery (see Perl v Meher, 18 NY3d 208; De Castillo v Reado, 230 AD3d 565 [2d Dept 2024]; Kahvejian v Pardo, 125 AD3d 936 [2d Dept 2015]). However, at some point, the evidence must include quantified range of motion test results (see Sukalic v Ozone, 136 AD3d 1018 [2d Dept 2016]); Calabro v Petersen, 82 AD3d 1030 [2d Dept 2011]; Acosta v Alexandre, 70 AD3d 735 [2d Dept 2010]; Kearse v New York City Transit Authority, 16 AD3d 45 [2d Dept 2005]).
Most importantly, the Court notes that in order to establish a significant limitation or a [*4]permanent consequential limitation in seeking to meet the serious injury threshold of the Insurance law, range of motion testing must be quantified with a goniometer or other objective measuring device (see Gonzalez v Cohn, 224 AD3d 667 [2d Dept 2024] [plaintiff's expert physician failed to identify method used to measure range of motion and failed to provide normal ranges of motion]; Dinc v Shalesi, 208 AD3d 558 [2d Dept 2022] [plaintiff's chiropractor failed to identify method utilized to measure range of motion]; Gersbeck v Cheema, 176 AD3d 684 [2d Dept 2019] [plaintiff's chiropractor didn't use goniometer]). To repeat, nowhere in any documents placed into evidence or in testimony adduced by Plaintiff was there mention of a goniometer or any other measuring device or tool which objectively measures range of motion.[FN5]

In Raugalas v Chase Manhattan Corp. (305 AD2d 654, 655-656 [2d Dept 2003]), the Court affirmed setting aside a jury verdict in a motor vehicle accident case in part because "the treating chiropractor failed to show that he relied upon objective, rather than subjective, medical tests in arriving at his conclusions (see Toure v Avis Rent A Car Sys., 98 NY2d 345, 350; Grossman v Wright, 268 AD2d 79, 84—85; Kauderer v Penta, supra at 366).
In Kilakos v Mascera (53 AD3d 527, 528-529 [2d Dept 2008]), in reversing the trial court, the Appellate Division held that judgment as a matter of law should have been granted at trial because
The mere existence of herniated or bulging discs, and even radiculopathy, is not evidence of a serious injury in the absence of objective evidence of the extent of the alleged physical limitations resulting from the disc injury and its duration (see Sharma v Diaz, 48 AD3d 442 [2008]). Here, the plaintiff's expert witness admittedly never recorded any range-of-motion findings, nor compared his findings to normal ranges of motion (see Morris v Edmond, 48 AD3d 432 [2008]). Rather, he merely made the conclusory assertion that the plaintiff suffered an approximately 30% limitation in various ranges of motion. Finally, neither the plaintiff nor his expert established that the damages at issue arose from the subject accident rather than from a prior motor vehicle accident in December 2000 during which the plaintiff sustained, inter alia, a fractured hip and herniated discs in his lumbar spine.
Plaintiff's evidence has not made out a prima facie case of permanent consequent limitations inasmuch as there is no objective evidence of decreased range of motion to the present; Dr. Katzman never used a goniometer or other objective measuring device to test range of motion.
As for significant limitations, there is no evidence of any doctor using a goniometer or other objective measuring device to test range of motion. Moreover, Plaintiff has failed to present evidence as to a duration of such significant limitations (see Partlow v Meehan, 155 AD2d 647). Also more than one exam with identified limitations is necessary (see Griffiths v Munoz, 98 AD3d 997 [2d Dept 2012]; Lively v Fernandez, 85 AD3d 981 [2d Dept 2011]).
Additionally, any range of motion test results in evidence from Dr. Katzman (without testimony that a goniometer or other objective measuring tool was used) have not been ascribed solely to the subject accident with a recognition of the subsequent September 2, 2021 accident [*5](see Tusu v Leone, 187 AD3d 655 [1st Dept 2020] [plaintiff didn't disclose pain treatment for prior accident to her doctor so his conclusion regarding causation is speculative]; Penaloza v Chavez, 48 AD3d 654 [2d Dept 2008] [speculative conclusion that conditions were result of subject accident although there were prior accidents, where doctor took plaintiff's word that prior injuries resolved and he didn't review her prior medical records]).
The Court notes also that there has been no objective evidence adduced by Plaintiff to the effect that from the subject accident he sustained a significant limitation or a permanent consequential limitation with respect to his head.
Plaintiff argues that De Castillo v Reado (230 AD3d 565 [2d Dept 2024]) and Kahvejian v Pardo (125 AD3d 936 [2d Dept 2015]) support his position in opposition to Defendant's motion. The Court disagrees. These cases repeat the Perl v Meher holding that there is no requirement to prove quantitative measurements of range of motion contemporaneous with the accident. However, the case law is to the effect that in order to make out a prima facie case of a serious injury there must be some medically confirmed admissible evidence of objectively measured limitations.[FN6]
As stated in Toure v Avis Rent A Car Sys. (98 NY2d at 351 [2002]), "an expert's opinion unsupported by an objective basis may be wholly speculative." There is no evidence here before the jury of objective expert testimony of limitations.
In light of the foregoing, the Court finds that "Here, viewing the evidence in the light most favorable to the plaintiff, and affording him every favorable inference, no rational jury could have concluded that he sustained a 'significant limitation of use of a body function or system' within the meaning of Insurance Law § 5102 (d)" (Kilakos v Mascera, 53 AD3d 527, 531 [2d Dept 2008]). The same holds true for "permanent consequential limitation of use of a body organ or member" (Insurance Law § 5102 [d]).
Accordingly, Defendant's motion to dismiss this action on the ground that Plaintiff has failed to make out a prima facie case of lack of a serious injury proximately resulting from the October 21, 2019 motor vehicle accident on the Van Wyck Expressway [FN7]
— as required by Insurance Law §§ 5102 and 5104 to sustain a claim for personal injuries proximately resulting from a motor vehicle accident — is GRANTED. IT IS HEREBY ORDERED that Plaintiff's complaint in this action is dismissed.
Dated: November 19, 2024
AARON D. MASLOW
Justice of the Supreme Court of the
State of New York

Footnotes

Footnote 1:Today, Plaintiff and Defendant stipulated that Plaintiff's claim for damages was limited to these body parts, and any claims relating to other body parts were withdrawn.

Footnote 2:An October 28, 2019 exam report of Dr. Yvette Davidov also contains no specifically quantified range of motion findings. 

Footnote 3:It is Defendant's counsel who, in his motion, referred to the lack of a goniometer for range of motion testing.

Footnote 4:Plaintiff did not call as a witness Dr. Davidov or Dr. Katz to testify as to their examinations of Plaintiff.

Footnote 5:The Court takes notice that another tool used by doctors is an inclinometer. There is no mention of an inclinometer being used in the documentary evidence or testimony herein.

Footnote 6:Naturally, Plaintiff's own subjective testimony of being able to move his left shoulder only 60% does not qualify. 

Footnote 7:The Court finds that there was sufficient evidence to present to the jury, after the close of Plaintiff's case, that some injuries sustained by Plaintiff proximately resulted from the subject motor vehicle accident, but that significant limitations or permanent consequential limitations proximately resulting from the subject accident were not prima facie established.